Good morning, Your Honors, and may it please the Court, my name is Cliff Gardner and I represent the petitioner Brian George. As I'm sure the Court is aware, there are two substantive issues in this case. One, of course, is the consolidation issue, which, at the risk of sounding like déjà vu, looks a great deal like the issue the Court just discussed with counsel. And the other, of course, is the instructional issue, that is, the refusal to instruct in accord with CALJIC 2.21.2. Now, the State's primary thesis as to each of these arguments is that Section 22- That's the instruction on the false in one part? I'm sorry, Your Honor, I couldn't hear you. That's the instruction about false in one part? Yes, exactly. Okay, go ahead. Now, the State's primary thesis as to each of these arguments is that Section 2254d bars relief, and that, of course, is the provision of AEDPA. If the State is right, then this Court has to affirm the district court decision denying relief. And so it seems that it behooves me today to use my time to discuss why Section 2254d does not bar relief as to each of these two claims. Well, let me ask you a similar question to the one I asked earlier, which is, regardless of the standard of review, where is the prejudice in terms of at least of the instruction? There was an instruction that it was up to the jury whether to believe a witness, that that was their function. And it seems to me common sense that one of the reasons why a jury might choose to disbelieve a witness, as is its complete prerogative, is that they've lied to the jury in any respect. So how can we find prejudice under any standard? I think you can for a couple of reasons, Your Honor, and I think the proposition you just suggested is a matter of common sense. But what happened here was, and the specific instruction is Calgic 2.2.1.2, which tells a jury that if you find a witness is willfully false in any particular matter, you can reject all of his testimony. And the question is in this realm But there is another instruction given that credibility is up to the jury. Yes. Completely up to the jury. Completely up to the jury. And that's the State's defense on the merits, and that is that these instructions are the missing instruction was effectively covered by an instruction that was given. And if that's true, then indeed the Court has to reject my argument, because if the point of Calgic 2.2.1.2, that's the instruction that was requested and refused. If that is given in other instructions, then indeed there's no error, or at least no prejudice. And I don't believe it is, and it's for three reasons, and this dovetails with the 2254d argument. The first is that when you look at the instruction actually given, Your Honor, you could ask the question, would the jury know it could distrust Phillips' testimony? The answer is yes. Would the jury know it could reject the entirety of Phillips' testimony if it found he was willfully false in one area? The answer is no. But if you stop that sentence at would the jury know that they could completely disbelieve this guy for any reason, they would have to answer yes. I don't think so, because here's what the instruction says. The instruction says here's a list of factors to consider in evaluating Phillips' credibility. And at the end of the day, you must consider all these. You may not automatically reject his testimony if you find he's inconsistent or there are conflicts. You may not. That's what it says. In my mind, that's in direct conflict with Calgic 2.2.1.2, which says you may reject his testimony if you find he's willfully false. Now, I concede, and my colleague, Mr. Baskin, he disagrees, obviously, that that's the exact opposite. But there is a tension there. And in resolving that tension, Your Honor, I think we have to look at how was this explained to the jury? How was this instruction, the standard instruction, explained to the jury? And that relates to the 2254d argument, because the State court did not consider the prosecutor's explanation. And the prosecutor's explanation was not considered. Kennedy. Hard for me to tell, you know, how much credit to give to these, I'll call it, finer differences between instructions on credibility, because it almost, doesn't it almost come down to common expense and human experience? That, you know, if a person is a false, willfully false in one part of their statement, you know, they're probably a liar, so you shouldn't believe them at all? I think had there been no instructions given on credibility at all, Your Honor, that would be correct. But one part of the instruction given said has the witness engaged in something, I'm going to paraphrase, there's kind of a catch-all. Has the witness engaged in any other behavior that calls into question their credibility? And it would seem to me that lying to the jury would certainly be within that. Well, it would seem to me, too. But remember, these are jurors that receive instructions, and then the prosecutor explains those instructions. And what the prosecutor says is, now, you may be, he recognizes the problem. And there's an instruction saying that the prosecutor's arguments and the defense counsel's arguments are not evidence. There is. And they're not the law. It's the judge that gives the law. There is. And there are many, and yet there are many Supreme Court cases that say in interpreting or in trying to understand how a reasonable juror would understand the instructions, we look to the prosecutor's argument. There's Boyd v. California, there's McNeil v. Middleton. And so I think we cannot just ignore the prosecutor's argument, which is what the State Court of Appeal did. And the prosecutor, let's give him some credit. He recognized that Phillips had some significant credibility problems. And he said, you may be tempted to disregard Phillips' testimony, but under the instructions you have been given, he told the jury, you cannot stop there. And in fact, had Calgic 2.21.2 been given, the jury could have stopped there. That argument explaining the standard instruction that Your Honor has referenced was point-blank wrong had Calgic 2.21.2 been given. And we cannot ignore the prosecutor's argument in assessing how a reasonable jury would have understood that instruction. They are, after all, strangers in a strange land looking for guidance. Let me turn, since I do want to save a minute or two for rebuttal, let me turn to the second issue, the consolidation issue. The Court has heard a great deal of testimony, testimony, discussion this morning on consolidation, and this may sound a little bit like déjà vu. And let me directly address the 2254d argument. The State argues the State court was reasonable to resolve the consolidation issue without considering the absence of curative or mitigating instructions and, again, without considering the prosecutor's argument that the jury should consider the 317 incident in corroborating Phillips' testimony as to the January 20th incident. And, of course, the defense position is that that rendered the State decision objectively unreasonable. You cannot ignore the fact that mitigating instructions were not given. Lane, Lewis, Bean all talk about the importance of mitigating instructions to the jury in the consolidation context. In terms of the prosecutor's argument, there's my colleague and I apparently disagree as to what that argument really, what the impact of that argument was. The prosecutor directly, again, recognized Phillips' problems in connection with credibility, in connection with the January 20th incident. And he said, okay, why should you believe him? And then he used the word corroboration. What's the corroboration? The March 17th incident, he said. So not only was the jury never told not to consider the March 17th incident in connection with the January 20th incident, the prosecutor told them that they directly could. And that is why the State court's failure to consider those two facts, both facts that have been identified in precedent as relevant to this analysis, renders it objectively unreasonable within 2254d. Unless the Court has questions, I'd like to reserve the hearing. You certainly may do that. Thank you, Your Honor. May it please the Court. David Baskind for Respondent. As far as the jury instruction, it's our position that it is common sense that when you think a witness is lying, that you can thereby infer that everything he's saying is a lie. The jury didn't need any instruction to understand that. And the instructions that were given conveyed that in a general sense. And counsel has just said that the appellant would have been better off if no instructions at all had been given. And by saying that, he's essentially saying that the instructions that were given were erroneous. But this is the first time I've heard anything of that nature. And I'm pretty sure in his briefs, he concedes that the instructions that were given were proper. And he hasn't made any argument that they're not. So I disagree with his contention that the instructions that were given somehow made the situation worse. They were all proper. None of them have been found to be improper. And they certainly are. I understood his argument to be that the instructions given, coupled with the prosecution's argument, left the jury with an impression that was incorrect. A little different than saying that the instruction given, standing alone, was improper. Well, I, you know, I look at the prosecutor's comment a little differently. The prosecutor did tell the jury, you know, even if you think that Phillips may have lied or been mistaken, I think he mostly meant mistaken, about a few facts, don't reject his entire testimony. Why did the prosecutor say that? Because it's human nature. It's perfectly natural for a jury, for a person to say, oh, this guy, this person lied about this fact. Therefore, he's a liar, and forget it all. And if he had received, if the jury had received the instruction that counsel suggests, it would have been told that it could do that, but it was also told that it didn't have to. And all the instructions together would have meant that. So the prosecutor's argument would have been the same, which is, okay, so you find he's a liar, but you still don't have to disbelieve everything. Right. And I urge you not to disbelieve everything. Right. That's a still permissible argument. I think it is. It's an implicit admission that, you know, I understand that you might be tempted, that you might be confused by the fact that Phillips misidentified the leg and told this strange story about the previous shooting in Lake County. And he's saying, you know, the main thing is focus on the fact that he was shot. There's no question he was shot, and, you know, he saw who shot him, and he knew the person who shot him. Just in terms of the substance of the argument, I just want to go to one little thing where we have a discrepancy about which shot, which leg Phillips was shot in, and the poem makes a pretty big deal about that. And I believe that, you know, Phillips just made a mistake. He was on the stand. He was stressed out. I think it's very common for people. I've had the experience where I have a leg or a knee or something that hurts, but when someone asks me about it, I can't remember which side it's on until I actually feel it or move it, and that reminds me. But the point that I want to get to is that in his reply brief, counsel says that there's undisputed evidence that there was a dumpster blocking Appellant from shooting Phillips in his left leg. And there was a what? There was a dumpster. Or a dumpster. Garbage dumpster. And obviously, I worked on this case a long time ago. I have no recollection of any evidence about a dumpster. I searched my notes, could not find anything about a dumpster. In the reply brief, there's a citation to the record, but it's a citation to defend counsel's argument, and there's still nothing about a dumpster there. And I would submit that if there actually was a dumpster that absolutely prevented Appellant from shooting Phillips in the leg where he was actually shot, that would have been a very important piece of evidence, and I think that defense would have focused on that and would have brought in more evidence of that. I mean, that's pretty determinative evidence, and there's nothing that I recall in the case about that. And then I'll just turn to the Joinder issue. Basically, the two sets of shootings were separate. They were not cross-admissible. That's true. But the jury demonstrated that they were able to compartmentalize the different sets by acquitting one count from each of the charges, acquitting and hanging on one count. And basically, the case law says that there's no better evidence that Joinder was not prejudicial than when a jury is able to do that, is able to not find unanimously on all counts. And here it didn't find unanimously on one count from each of the shootings. And then my last point would be that there's no greater argument that the two sets of cases were not stronger or weaker than the other than the fact that Appellant argued at trial that the Phillips shooting was stronger and then an appeal argued that the subsequent shooting was stronger. And counsel is correct that, you know, we don't always know what the evidence is going to show, but by the same token, the judge doesn't know either when he makes his ruling or she makes her ruling. And, you know, we are looking at this retrospectively, but, I mean, this is really good evidence that it went either way. And there was nothing at trial, there were no huge surprises that made the evidence different than was expected. So I think the evidence, neither of the shootings were particularly inflammatory, they were very similar, and neither was stronger than the other. So Joinder was proper. Thank you. Thank you, counsel. Mr. Gardner, you have a little time remaining. Thank you, Your Honor. I'll just make two points about the consolidation issue. The first counsel points, counsel suggested that they didn't acquit on each or there was an acquittal on each of the two incidents. There was an acquittal on the March 17th incident, which was the stronger incident. There was not an acquittal on the January 20th. There was a hung jury. And the case law does not say you look to see if there's a hung jury to see if they could compartmentalize. It says you look to see if there was an acquittal. And here there wasn't an acquittal. At least it suggests that they weren't just swept away by wild prejudices. Well, I think actually just the opposite, Your Honor. The fact is, had the January 20th incident not been combined with the March 17th incident, there's no way that would have been a hung jury. It would have been an acquittal. Just think about what would have happened had the cases been separated and the Phillips case tried alone. You would have had Phillips testimony alone for the State to rely on to prove beyond a reasonable doubt those incidents. Phillips lied about or was false in just about everything. Which leg was shot? Was the bottle destroyed? Was he kicked in the face? The motive evidence. Was there a chad? Was the car bumped? Was the tire shot out? All of it was wrong. They would have relied on Phillips alone. So that acquittal, Your Honor, I mean, that 11-to-1 hung jury, had the March 17th incident not been there, it would have been an acquittal. I think it's likely it would have been. So I don't think that shows they were able to compartmentalize. I think in light of the prosecutor's argument that they could rely on March 17th to corroborate Phillips, it shows that he was prejudiced because there's no way the State goes into the January 20th incident just with Phillips and comes out with convictions. The second point in the last six seconds I have is the rhetorical observation that's made that at trial they argued the March 17th incident was weaker and now, of course, I'm arguing that the March 17th incident was stronger. And the reason for that, as counsel identified, is that the due process analysis, were you denied a fair trial, is made at the end of the case when you can see if someone is denied a fair trial. We're not arguing with the severance ruling pretrial. No new surprises. Phillips' testimony was an extraordinary new surprise. He got the leg wrong. He got the bottle wrong. He got the face kick wrong. He got the tire shooting wrong. He got the car bumping wrong. He got Chad wrong. He got it all wrong, Your Honor. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted. And once again, we appreciate very much the arguments of both counsel.
judges: Adelman, Tashima, Graber